Moncure, P.,
delivered the opinion of the court.
This is a supersedeas to a judgment of the corpora-^on ccmrt Fredericksburg, obtained by the plaintiff in error, Bragdon, against the defendants in error, Taylor and others, owners of the steamboat "Wenonah, for the amount of certain fees claimed to be due by the said owners to the said Bragdon, as harbor master of the port-of Fredericksburg.. The action in which the said judgment was obtained, was an action of assumpsit. The declaration.contained only the common counts. In the first count, after setting out the considerations of work and labor done, goods sold and delivered, money lent and advanced, and money had and,received,.in the common form, a special consideration is set out thus : “And also in the further sum of $444, due on the day and year aforesaid, to the said Bragdon, as harbor master’s fees, from the said owners of the steamboat ‘Wenonab,’ as by statute and act of assembly made and provided, and enacted February 16tb, 1867 ; said Bragdon being the legally appointed and qualified harbor master of the port of Fredericksburg, and performing all the duties of the same during the time for which said fees are charged, and said steamer being, during the time for which said fees are charged, a steamer plying regularly between the port of Fredericksburg, Va., and the port of Baltimore city, Md., and of 500. tons or more burden ; on which account said defendants are liable to pay to the plaintiff the said sum of $444.” Such was the amount, and such the consideration of the claim, as specially stated in the declaration. The only plea to the action was the general issue of non-assumpsit, on which there were verdict and judgment for the amount of the claim, $444, with interest thereon from the 31st day of August 1870, until paid and costs. During the progress of the trial, the court refused to give several instructions asked for by the defendants in the action ; and after the vei’dict was rendered, the court overruled the motion of the defend *687 ants to set it aside. To these rulings of the court a bill of exceptions was taken, in which the facts proved on the trial were certified. The purport of which certificate, so far as it is deemed material to state the same, is substantially as follows :
The plaintiff, to support the issue joined, proved that he was the harbor master, duly appointed by the corpo-, ration court for the town of Fredericksburg ; that he had qualified under the acts of the Virginia Legislature, and had discharged the duties of that office for the period covered by his bill of particulars filed with his declaration, to wit: from the 16th day of March 1867, to the 20th day of March 1869, and from the 16th day of March 1870, to the 81st day of August 1870 ; that the steamer Wenonah, owned by the defendants, plied regularly, during that period, between the city of Baltimore in the State of Maryland, and the town of Fredericksburg in the State of Virginia, and was of more than 500 tons burden ; that all the wharves at Fredericksburg, on the Kappahannock river, which is navigable at the port of said town, belong to individuals, and it has always been the 'universal custom, within the memory of the witnesses, for vessels to land at any wharf they might choose, paying the owner wharfage therefor ; that prior to the purchase -by the defendants of the wharf where the steamer Wenonah landed in 1865, this custom had prevailed at that wharf; that since the late war very few vessels have come to Fredericksburg, the trade having been done principally by two steamboats, one of which was the Wenonah ; each of said boats arriving weekly at said port; that the plaintiff had always kept the approach to the wharf open, rendering it unnecessary to be called upon to do so; that he had demanded of one of the owners of said steamer his legal fees, soon after the passage of the act of the Legislature hereafter mentioned, and payment was refused; that the said stéamer arrived at the port of Fredericksburg from Bal *688 timore, the'number of times set out in the bill of particu^ara > ^iat the said steamer was a common carrier of fright an(^ passengers to and from Baltimore andFredericksburg ; its owners owning several wharves on the r jyei,} for except ’the one at Fredericksburg, they charged wharfage, the wharfage of that one having gone •to the . account of freight; that ’the plaintiff had petitioned the Legislature" to pass the act of March 1867, because the trade with Virginia, which was, prior to the war, carried on by vessels, was now almost entirely carried on" by steamers ; that some time during the year 1867 he notified the master of the Wenonah that he would claim harbor master’s fees, and at the same time sent by said master a letter to that effect to Robert A. Taylor, one of the owners of said steamer.
The defendants, to maintain the issue on their part, proved, that in 1865, they, in conjunction with one Mason Weems, purchased, and had conveyed to them by deed from A. K. Phillips, a wharf in the town of Fredericksburg, which they have continued to own from that date, and still owned at" the trial of the cause, on which they have spent a large amount in improvements, •including a buildiug erected thereon; that during the entire period for which harbor master’s fees are charged in this cause, said steamer Wenonah was moored and made fast to said wharf, and to no other, at the town of Fredericksburg ; that during the same period,-and their ■entire ownership of the same, they have exercised complete and exclusive control of said wharf; that no other steamboats, vessels or craft of any kind, could or did occupy said wharf without their special permission, and no charge was ever made, or anything received, for such occupation, and but one instance proven at the trial in W'hich it was ever so occupied ; that no charge was ever, made, or amount received, as wharfage, on any goods .at said wharf, landed from or shipped by said steamer Wenonah, or any other steamboat, vessel or otherwise, *689 and that said owners claimed said wharf as their private property, over which they exercised exclusive ownership ; that no demand was ever made by the plaintiff for the fees named in his bill of particulars upon the master of the Wenonah, nor upon any of the other agents of said defendants, nor upon the defendants, save upon one of them, Robert A. Taylor, in the year 1867, who refused to pay the same, on the ground that the plaintiff' had no right to them under the law ; that one Dawes had been captain and master of said steamer from the year 1865 to the date of the trial, and that neither he nor the agent of the said defendants at Fredericksburg, nor any other agent or owner of said steamer, had ever called on said plaintiff' to render any service as harbor master; and that, within the knowledge of said defendants and their agents, no services had ever been rendered to them by said harbor master as such.
The foregoing being all the material facts proved, the defendants prayed the court to instruct the jury as follows:
1. If the jury believe that the wharf to which the steamer Wenonah went and was made fast, during the time at which harbor master’s fees are charged by the plaintiff', was during that time a private wharf, the said steamer is not liable to pay said fees, and the jury should find for the defendants.
2. All acts of a State Legislature, regulating commerce between the States, and authorizing harbor masters to charge a fee on a steamboat plying between the ports of one State and the ports of another State, passed without the consent of the United States Congress, except what may be absolutely necessary for executing the State’s inspection laws, are Contrary to the United States constitution, and are therefore illegal and void.
8. All duties and charges on the tonnage of steamboats, carrying on commerce between one State and another State, authorized by the act of a State Legisla *690 ture, are in contravention of the United States cbnstitution, and are therefore void.
act ^rS™a Assembly of 1866-67, ch. 209, enacting that harbor mastei’s should be entitled to (jemaHC| an(j i>eceive the sum of four dollars on any steamer of five hundred tons burden or more, plying regularly between any ports -of this State (other than Uorfolk and Portsmouth) and those of other States, whether called on to perform any service or not, is in contravention of the United States constitution, in that it is an attempt to regulate commerce' between the States, and is also a duty on tonnage, which is unconstitutional and void.
But the court refused to give the said instructions, and in their stead gave two others, which are identical with the second and third asked for hy the defendants, omitting these words in the second, viz : “ and authorizing harbor masters to charge a fee on a steamboat plying between the ports of one State and the ports of another State.”
And thereupon, .the plaintiff prayed the court to instruct the jury as follows :
1. If the jury believe from the evidence that the steamer Wenonah (during the time mentioned in the bill of particulars filed with the declaration) was a steamer plying regularly between the port of Fredericksburg and the port of Baltimore, in the State of Maryland, and that said steamer was of five hundred tons burden, then the harbor master of Fredericksburg is entitled to a fee of four dollars for each arrival of said steamer at the port of Fredericksburg.
2. It is a question of fact for the jury, whether the wharf at which the steamer Wenonah landed is a private or a public wharf.
Which instructions the court accordingly gave. And a verdict having been found for the plaintifi', and a motion to set it aside and grant a new trial having been *691 made by the defendants, and overruled hy the court, a bill of exceptions was taken by the defendants as aforesaid. A bill of exceptions was also taken by the plaintiff to a ruling of the court on the trial, but it is not material to be stated.
The plaintiff in the court below (the defendant in error here,) claims to be entitled to his demaud in this case under section 12 of chapter 95, of the Code of 1860, entitled “ of harbor masters and dock masters,” as amended by the act passed February 16, 1867, entitled “an act to amend and re-enact the 1st, 2d, 3d, 4th, 5th, 6th, 12th, 13th, and 15th sections of chapter 95, of the Code of 1860, concerning harbor masters and dock masters,” Acts of Assembly 1866-67, chapter 209, p. 648. The said section 12, as amended, provides, among other things, “that for every vessel arriving at any port other than Norfolk or Portsmouth, the harbor master shall be entitled to the following fees,” viz: “For steamers plying regularly.between any other ports of this State (except those of Norfolk and Portsmouth), and those of other States, if under 300 tons, two dollars ; if 300 tons and under 500 tons, three dollars ; and if 500 tons or more, four dollars.”
On the other hand, the defendants in the court below (the plaintiffs in error here) insist, first, that they are exempt from liability for the said demand, even under the State law; the 17th section of said chapter 95 of the Code, expressly providing that, “Nothing in this chapter shall prevent any bay or river craft or other boat, from going to and anchoring at any private wharf, without fee to any harbor master or superintendent.” And if the State law would make them liable, they insist, secondly, that it would contravene those provisions of the Constitution of the United States, or some of them, which declare that Congress shall have power “to regulate commerce with foreign nations, and among the several States,” &c., Article 1, section 8, clause 3 ; that. *692 “ no State shall, without the consent of Congress, lay any imposts or duties on imports or exports, except,” section 10, clause 2 ; and that “no State shall, without the consent of Congress, lay any duty of tonuagey> jcp ciause g ; am|; therefore, that the State law, to that extent, would be null and void.
There can be no doubt but that the plaintiff is entitled to his demand according to his claim, unless the defendants can maintain the exemption which they claim under the State law itself, or else that that law is unconstitutional and void as aforesaid. And now let us enquire in the first place, whether the defendants are exempt from liability for the said demand under the Code, chapter 95, § 17, p. 489.
The counsel for the defendants rightly argued in this court, that chapter 95 of the Code is now to be read in connection with the amendatoi’y act of February 16, 1867, as if they were, as in effect they are, one and the same act, all the amendments of the latter being considered as engrafted on the former. The amendatory act amends and re-enacts nine of the twenty sections of chapter 95, of the Code; but it neither amends nor repeals the 17th section of that chapter, which, therefore, still remains in full force and effect. So that we find, at or near the end of the chapter as it now stands, a section which declares, that “nothing in this chapter shall prevent any bay or river craft or other boat, from goiug to, and anchoring at, any private wharf, without fee to any harbor master or superintendent.” The plaintiff’s demand is for fees as harbor master, under the 12th section of the chapter as amended, charged on account of the said steamer of the defendants, which, whenever it went to Fredericksburg, during the periods for which the said fees were charged, always went to and auchored at, or was fastened to, their own private w'harf. And it is very clear that the defendants are exempt from this demand, if the said steamer be a “bay or river craft *693 or other boat,” within the meaning of the said 17th sectiou. The question, therefore, comes down to this : Does the said, steamer come within the meaning of the said section ?
It is argued that it does not; 1st, because the words, “bay or river craft or other boat,” refer only to small vessels, and do not embrace a vessel of the size of the said steamer ; and, 2dly, because the 17th section should be read in connection with the sections among which it is immediately located; to wit: the 14th, 15th, 16th, and 18tli sections, which, with the 17th section, are all arranged in the chapter under the heading, “Who to superintend county dock in Norfolk,” and should he considered as referring, like its associates, only to vessels entering the dock in the city of Norfolk, or the port of said city.
As to the first of these two grounds, that “bay or river craft or other boat” refers only to small vessels. “ Craft,” we are told by lexicographers, is “a name now sometimes applied to all kinds of sailing vessels,” though “formerly restricted to the smaller vessels.” Worcester’s Dictionary, in which Johnson is cited as authority. We cannot suppose that the Legislature, in thus, securing to the owners of wharves the use of their property, free from the burden of harbor master’s fees, intended to limit the right to small vessels, by the use of terms so vague. If these terms mean small vessels, how is the size of the vessel to be ascertained ? Where is the line to be drawn? We think it much more reasonable to suppose, that the Legislature used the word “craft” in this instance, in its larger sense as meaning “all kinds of sailing vessels.” But the words, “ or other boat,” are also used in the section, which are sufficient of themselves, to embrace a steamer of the size of the Wenonah. At all events we think a steamer of that size is embraced in all the words used in the section, taken together, as descriptive of the vessels referred to.
*694 As to the other ground, that the section refers only vessels entering the county dock in the city of Nor- or P01’t sa^ "We do not think there is any sufficient reason for giving it so limited a meaning, cou{raiy to the proper import of the words used. The words of the section are general words, used without any limitation whatever. “Nothing in this chapter thus embracing all the sections of the chapter, and not those only under the heading, “ who to superintend county dock in Norfolk;” “ shall prevent any bay or river craft or other boat from going to and anchoring at any private wharf, without fee to any harbor master or superintendent.” The headings of the sections constitute, of course, no part of the law, and were adopted for convenience by the revisors of the Code. The 1 7th section was no doubt placed in its present location, near the end of the chapter, to apply to all the preceding sections, including those in regard to the county dock in Norfolk, and the superintendent thereof. We find the same section, substantially, in all or nearly all the general laws on the subject, since it was first made a matter of legislation in the State. Iu the first act on the subject, passed the 25th of November 1785, entitled “An act for the appointment of harbor masters, and declaring their duty,” there was a proviso to the fifth section, “ that no master or commander of any river or bay craft shall be subject to the payment.of any fee by this act imposed.” In the next act, passed the 18th of January 1798, entitled “An act to amend the act entitled an act for the appointment of harbor masters, and declaring their duty,” section six provided, that “ this act shall not be so construed as to authorize any harbor master to prevent any bay or river craft from going to or anchoring at any private wharves.” These two acts are .copied literally in the Revised Codes of 1802 and 1814, and may be found on pages 14 and 381 of the former, and 21 and 537 of the latter. They are consolidated in one *695 net in 2d Rev. Code of 1819, p. 128, ch. 217, entitled “ An act to reduce into one act the several acts concerning the appointment of harbor masters, and declaring their duties.” Section six of this act, is a literal copy of section six of the act of 1798 aforesaid. We find the same section, substantially, in chapter 95 of the Report of the Revisors, and of the Codes of 1849 and 1860; being section twelve of the former two, and section seventeen of the latter. This section has the same meaning wherever it occurs in any of the places aforesaid. There can be little or no doubt as to its meaning in the Codes of 1808, 1814 and 1819, and there can be no more as to its meaning in the Codes of 1849 and 1860. The established rule of construction of the latter Codes, or rather of the Code of 1849, is, that an intention not to change the former law will be presumed, unless a contrary intention plainly appear.
By a review of our legislation on the subject, we find •that from its commencement, the Legislature has manifested a disposition to encourage the bay and river trade and to exempt it from unnecessary burdens. It seems to have been regarded as a domestic trade, though a large portion of the bay, and some of its tributary rivers, lie within the limits of our neighboring and sister State of Maryland. Therefore, in the very first act concerning harbor masters, to wit: the act of 1785, the 5th section,' which prescribes their fees, expressly provides “that no master or commander of any liver or bay craft, shall be subject to the payment of any fee by this act imposed.” 'Thus we see that this “ craft” was by that act exempted from any fee, whether they anchored at a public or private wharf, or in the open dock or harbor. By the next .acton the subject, to wit: the act of 1798, power was given to harbor masters “to regulate the anchoring of the river and bay crafts that shall come within their respective jurisdictions” (§ 1); and it was declared that they “ shall be entitled to receive from the master or *696 shipper of each bay or river craft that shall go within county dock, or that shall anchor at, or be secured county w^arfj twenty-five cents,” &c. (§ 3.) Havmade these new provisions, and having repeated in g.g.-ggf. ^ie provjso annexed to the 5th section of the act of 1785 as aforesaid, by providing “ that no master or shipper of any bay or river craft shall be subject to the payment of any fee by this act imposed, except those who shall go within any ferry dock, or shall anchor at, or make fast to the county wharfs ” (§ 5); the act of 1798 then declares, that “ this act shall not be so construed as to authorize any harbor master to prevent any bay or -river craft, from going to or anchoring at any private wharves.”. (§6). This, as we have before seen, is the same provision, in effect, which has come down to us as section 17 of chapter 95 of the present Code-; and we see here why it. was that the exemption whieh it delares was confined to those vessels which go to or anchor “ at any private wharves,” and was not extended to those which “ shall go within any ferry dock or shall anchor at or make fast to the county wharfs the latter vessels being, by the same act, burdened with a small fee to the harbor master. These provisions of the act of 1798, in regard to the “ county dock” or “ferry-dock,” and “ county wharfs,” no doubt had special reference to the city of Norfolk, which was our great seaport, and where the terms were well known and understood. But the language of the earlier acts on the subject is-general, not naming Norfolk or any other place, and applies to all places where there are docks or wharves, public or private. The exemption was not intended as a-peculiar privilege to Norfolk over the other portions off the State, but was intended as a privilege to all who-were engaged in the bay or river trade, to whatever port of the State it might be directed. In the subseqneut legislation on the subject, we find special acts in regard* to Norfolk and Portsmouth, -which were enacted, not to *697 give those ports advantages over any others in the State, but because, being our -chief seaports, they seemed to require some special legislation not adapted to other porÜ011S of the State.
Our review of the course of legislation on this subject also informs us, why it was, that the words, “ bay or river craft,” came to be first used and since continued, in the provision we have been considering. The word “craft” generally implies small vessels, though it is sometimes used to embrace vessels of all sizes. But it was not used iu the said provision because it was intended to confine the privilege iu question to small vessels. The privilege was intended to be given to the bay and river trade, and not to the vehicle in which that trade was condutced. The word “ craft,” may have been used because at that time the bay and river trade was exclusively conducted in small sail vessels, such as did not usually go outside of the capes; and, therefore, the whole trade was exempted by the exemption granted to “ the bay and river craft.” Steam had not then been used as a motive power to propel vessels. The introduction of that propelling power has wrought wonderful changes in navigation, and one of these changes is, that most of the bay and river trade is now, and for a long time past has been, carried on in steamboats instead of' sail vessels. But there is the same reason for the exemption of the trade now as there ever was heretofore. That it is conducted in steamboats, instead of sail vessels, can-make no difieren ce. Nor that these steamboats are-often of many moi’e tons bui’deu than the ordinary river and bay craft formerly were. Steamboats are embraced by the word “ craft,” as well as sail vessels ; though that word might not have been as happily chosen to embrace-a steamboat of 500 tons burden, and probably would not have been chosen, if steamboats, and especially steamboats of that size, had been in use when the word was first used in this connection. But the word, in one of *698 its meanings, sufficiently embraces a boat of that size ; aml as such a boat has been brought to the service of trade and commerce since the provision aforesaid was first enacted, and plainly comes within the spirit and meanjüg 0f pj-ovision, we must also hold it to be within the letter of the law. But if. there were any doubt upon that' question, the 17th section of chapter 95 of the Code, as if from abundant caution, adds to the words “any bay or river craft,” the words “or other boat,” which seems expressly to embrace all steamboats.
But why should the defendants be required to pay to the plaintiff four dollars every time their steamer comes to Fredericksburg, though it comes there once a week, and every time it comes, comes along a great public highway, and remains, while there, alongside the private wharf of the owners? The burden to which they are thus subjected is a vei’y heavy burden, and ought not to be imposed without a corresponding benefit to be received by them from the person to whose use the burden is to enure. "What consideration have these owners received from the plaintiff or any other person for the heavy charge now made against them ? The proof certified is, that during the whole period for which the charge is made, neither they nor any of their agents ‘ ‘ had ever called on said plaintiff to render any service as harbor master,” and “ that, within the knowledge of said defendants and their agents, no services had ever been rendered to them by said harbor master as such.” To be sure, it is further certified as proved by the plaintiff, “ that he'had always kept the approach to the wharf open, rendering it unnecessary to be called upon so to do.” But how had he kept it open ? It is not pretended that he kept the navigation open by cleaning out the •river of sand or other obstructions lodged in the bottom. It is only pretended that he kept the approach to the wharf clear of other vessels. But his own proof shows “ that since .the late war very few vessels came to Frede *699 •ricksburg, and that tbe trade was done principally by two steamboats, one of wbicb was tbe Wenonah, each of said boats arriving weekly at said port.” So that the keeping of the approach to_ the wharf open by seeing that no vessels were in the way must have been a very small job. _
We are therefore of opinion, that the 17th section of chapter 95 of the Code exempts the defendants frqm any charge for fees to the plaintiff as harbor master at Fredericksburg, and that on that ground the judgment must be reversed, the verdict set aside, and the cause remanded for a new trial to be had therein. And this renders it unnecessary to decide, or consider, the other question, in regard to the constitutionality of the law, supposing it to impose the charge aforesaid, which we do not think it does. That question was ably argued by the counsel on both sides, and will deserve to be well considered when it is necessary to decide it. Being now unnecessary, we therefore think it would be improper to decide it.
Judgment reversed.